NICHOLAS W. S. CATLIN, Executor, etc., Appellant, *v.* GOTTLIEB GRISSLER et al., Respondents.

The·decision of a General Term, determining and settling the principles and the rule governing a case, but directing further proceedings to make them effective and to perfect the judgment, does not become operative as a final determination of the rights of the parties, for the purpose of an appeal to this court, until such subsequent proceedings are taken.

A General Term decision reversed a judgment below in favor of plaintiff, in part, and directed a reference to ascertain the amount to be paid by the respondent in consequence; and upon the coming in of the report of the referee a further judgment was made and entered June 6, 1872, reciting the former decision, confirming the report and directing the payment of the amount reported. Plaintiff appealed, stating in his notice of appeal that it was from the judgment of June 6, 1872, in so far as the same reversed the judgment below and directed payment, etc. *Held*, that the appeal was, in effect and fact, from the actual determination of the General Term as finally adjudged, and that the notice was sufficient.

In an action for the foreclosure of a mortgage covering certain leasehold interests in lands, the judgment; after the usual directions for sale, directed the sheriff, out of the proceeds, after deducting fees and expenses " and any lien or liens upon said premises so sold, at the time of such sale, for

taxes or assessments and all rents due " by the mortgagors upon the leases, to pay to the plaintiff his costs and the amount found due, etc. Defendants G. and F., claiming as incumbrancers, appealed. The order of General Term stated that the appellants waived all claim for an absolute reversal, and claimed only the modification of all directions for the application of the proceeds; and the judgment, so far as it directed the payment of liens for taxes and assessments and of rents, was reversed. *Held,* error. 1st. That the waiver and the affirmance by consent of the provisions of the judgment below directing a sale, necessarily precluded a reversal of the directions as to the payment of incumbrances, as the order was entire and indivisible, simply directing a sale free of incumbrances; and the parties could not avail themselves of the enhanced price resulting from such a sale, and at the same time repudiate the directions by or under which it was obtained. 2d. That the directions were proper; that, as the purchaser would take the leasehold interests subject to the liability of being dispossessed for non-payment of rent, the rent in arrear was, in practical effect, a lien, and its payment proper to be provided for, with other liens, in accordance with the settled practice upon foreclosure; and that, as to the taxes and assessments, it was immaterial that the interests sold were leasehold, and in the absence of express agreement they were for the lessor to pay, as it was necessary, in order to secure the full value of the property, that the purchaser should acquire title free of incumbrance.

In the mortgage the leasehold interests were described in general terms; the pleadings disclosed what premises were leased and the terms. *Held,* that the leases, or the record of them, could properly be read and considered upon appeal to this court, although not read in the court below.

(Argued January 13, 1874; decided May term, 1874.)

Appeal from judgment of the General Term of the Superior Court of the city of New York, reversing in part a judgment in favor of plaintiff entered at Special Term.

The facts material to the decision by this court are sufficiently stated in the opinion.

*Douglas Campbell* for the appellant. The mortgage and leases mortgaged can be read upon the hearing of the appeal. (*Bk. of Charleston* v. *Emeric,* 2 Sand., 719; *Rockwell* v. *Merwin,* 45 N. Y., 166, 168; *Jarvis* v. *Sewall,* 40 Barb., 449.) The leases of the mortgagors containing a covenant of re-entry for non-payment of rent, the mortgagee was at liberty to pay rent in arrear to prevent forfeiture, and could tack the rent to

his mortgage. (*Robinson* v. *Ryan*, 25 N. Y., 320; *Silver Lake Bk.* v. *North*, 4 J. Ch., 370; *Faur* v. *Winans*, 1 Hopk., 283; *Burr* v. *Veeder*, 3 Wend., 412; *Rapelye* v. *Prince*, 4 Hill, 119; 2 R. S., 515, § 43; *Wooley* v. *Drag*, 2 Anst., 521; 3 Powell on Mort., 921.) It was proper to include in the judgment a direction to the sheriff to pay the rent then due on the mortgaged leases. (*McDermot* v. *McDermot*, 3 Abb. [N. S.], 451; *Rogers* v. *McLean*, 10 Abb., 306.)

*John J. Townsend* for the respondents. The appeal should be dismissed. (*Swarthout* v. *Curtis*, 4 N. Y., 415; *Clark* v. *Brooks*, 2 Abb. Pr. [N. S.], 404.)

LOTT, Ch. C. This is a case *sui generis*, and the practice therein cannot be recommended as a precedent. The complaint sets forth that the defendants Joseph G. Browning and Jacob W. Moore, for the purpose of securing an indebtedness of $20,000, with interest, to the plaintiff, for which they had executed their bond to him, bearing date the 4th day of August, 1868, also executed and delivered to him, at the same time, a mortgage on certain lots of ground in the city of New York, with the buildings thereon erected, in process of erection and to be erected, particularly described by metes and bounds, "with the leases and terms of years unexpired of the said Joseph G. Browning and Jacob W. Moore, of and in said premises." It is then alleged that the said mortgage was duly recorded in the office of the register of the city and county of New York, on the 5th day of August, 1868, in *liber* 869 of mortgages, page 180, and that the mortgagors had made default; and the plaintiff, thereupon, after a statement that the defendants Grissler and Fausel, and certain other parties named, had, or claimed to have some interest in or a lien upon the said mortgaged premises or some part thereof, and that such interest or lien, if any, had accrued subsequently to the lien of said mortgage, demanded judgment, that the said premises might be decreed to be sold according to law, and that he might be paid out

of the moneys, arising from the sale, the amount due him on the said bond and mortgage, and have such other or further relief, or both, as should be just and equitable.

The said defendants Grissler and Fausel put in an answer. They did not deny or controvert the execution of the said bond and mortgage as alleged in the complaint, but claimed a priority of lien, under and by virtue of a notice of lien filed with the clerk of the city and county of New York, on the 23d day of February, 1869, for work done and materials furnished, as alleged, by them, toward the erection of buildings on the lands described in the mortgage, under a contract with the said mortgagors, dated the 18th day of May, 1868. In that answer they state and show that the interest of the mortgagors was a leasehold estate, for a term of years only, under two different leases, one for a part of the premises from the plaintiff, as the owner thereof, dated the 30th day of July, 1867, for the term of ten years from the 1st day of May, 1868, and the other for the residue thereof, from Edward C. Richards, dated the 15th day of January, 1868, for the term of seven years from the first day of May in that year, with the right to a renewal until the 1st day of May, 1878. They then allege that the plaintiff and the mortgagors agreed with each other to improve the said property, by the erection of valuable buildings thereon; that he agreed to advance to them "certain moneys, to be expended in such improvements;" that the contract by the said mortgagors with them, above referred to, was made with the knowledge and consent of the plaintiff, and that a large portion of the said work and materials had been done and furnished prior to the 4th day of August, 1868, and before the execution and delivery of the bond and mortgage set forth in the complaint; and, that on the day they filed their said notice of lien, there remained unpaid on account thereof, the sum of $9,666, with interest, the payment of which, however, by the terms of the said contracts, had not matured at the time their answer was interposed. These allegations are followed by a statement "that they have no knowledge or information sufficient to form a

belief, whether the sum of $20,000, or any other sum, was lent by the plaintiff to said Browning and Moore, or whether that sum or any other sum is due, or has been secured by said bond and mortgage ; " and that if any money whatever is so due, it was lent and advanced to Browning and Moore for the improvement of said land, demised by plaintiff, and with notice of their contract with them, as above mentioned, and in pursuance of the plaintiff's agreement, so alleged to have been made with Browning and Moore, as above mentioned ; and then they claim that, " by reason of the premises, their lien for $9,666 is prior to the alleged lien of the plaintiff's mortgage."

It is proper, in this connection, to state that there is no allegation in the complaint that the sum of $20,000, or any other sum, was lent by the plaintiff to the defendants Browning and Moore, or how the indebtedness, intended to be secured by the mortgage given by them, accrued. It therefore clearly appears from the preceding statement of the matters alleged in the pleadings, that there was no issue of fact to be tried, and that, consequently, it was a proper case for a reference and judgment under the seventy-second Rule of the Supreme Court. No material fact alleged in the complaint was denied by the answer, and the matters set up therein constituted no defence; and, as the notice of lien claimed for work done and material furnished by the respondents, was not filed till more than six months after the execution and recording of the plaintiff's mortgage, there was no ground for claiming a priority of their lien over that of the mortgage. Such a reference was ordered to Roger A. Pryor, Esq., as referee; and, on the coming in of his report, finding that there was, at the date thereof, due to the plaintiff the sum of $20,000, for principal, and the sum of $1,438.35, for interest, and upon proof of all the other facts required by the rules and practice of the court, the court, at Special Term, on due notice to the defendants entitled thereto, confirmed the said report, and adjudged that the mortgaged premises described in the complaint (and which were set forth

in the judgment, as so described), or so much thereof as should be necessary for that purpose, should be sold, to satisfy the amount so found due for principal and interest, by the sheriff of the city and county of New York; that either or any of the parties to the action might purchase at such sale, and that the sheriff should execute to the purchaser or purchasers a deed or deeds of the premises sold.    The judgment then contained a direction " that out of the moneys arising from such sale, after deducting the amount of his fees and expenses on such sale, and any lien or liens upon said premises so sold, at the time of such sale, for taxes or assessments, and all rents due by the defendants Browning and Moore upon the leases mentioned in the said mortgage, the said sheriff pay to the plaintiff or his attorney," the plaintiff's costs and extra allowance (the amounts whereof were specified), and the amounts so reported due, as above mentioned, together with the legal interest thereon from the date of the said report, and that he " take a receipt therefor and file it with his report of sale." It then directed that the surplus, if any, should, within five days after the same was received and ascertainable, be deposited with the chamberlain of the city of New York, to the credit of the action, subject to the further order of the court.    The defendants Grissler and Fausel appealed from the said order of reference, and, subsequently, from the said judgment to the General Term of the court; and a judgment was afterward, and on the 1st day of April, 1871, rendered by it to the following purport and effect: It was therein stated that counsel for the appellants and respondent had been heard, and that the said appellants had waived all claim for an absolute reversal of said judgment, by reason of a partial execution thereof before the hearing of said appeals, and claimed only the modification of all the directions contained in said judgment (so appealed from) for the application of the proceeds of the sale, except for the payment of the fees and expenses of the sheriff on such sale, and the payment of the plaintiff's costs and charges and allowance in the action, by said judgment, directed

to be paid.  Then, it was ordered that the said order of refer-
ence and the said judgment, so far as it directed the payment
of the said fees and expenses of the sheriff, the plaintiff's costs
and extra allowance, and the amounts so reported due to
him, with interest, as above stated, be affirmed.  It con-
tained the following provisions and declarations, viz. : " And
it is further adjudged, that the said judgment be reversed,
so far as it directs the said sheriff to deduct out of the moneys
arising from such sale the amount of any lien or liens upon
said premises so sold at the time of such sale for taxes or
assessments, and all rents due by the defendants Browning
and Moore upon the leases mentioned in said mortgage.
And it is further ordered and adjudged, in order to make
complete restitution of all property and rights lost by the
erroneous provisions in said judgment, which are hereby
reversed, that the said Joseph R. Stuyvesant, plaintiff herein,
restore and  pay forthwith to the chamberlain of the city of
New York, all the moneys which he, or his attorneys herein,
have received from the sheriff of the city and county of New
York, for rents or interest on rents under the erroneous pro-
visions in said judgment, with interest from the time of such
receipt by the said Joseph R. Stuyvesant or his attorneys, and
that he also restore and pay to the said chamberlain all
moneys which he or his attorneys have received out of the
proceeds of said sale, upon his application, founded on the
said judgment for the payment of taxes on said premises,
with interest; all such sums to be credited by said chamberlain
to this cause, to abide the further order of this court, as
ordinary surplus moneys. And it is hereby referred to Joseph
Meeks, Esq., to ascertain and  fix the amount to be restored
by said plaintiff according to the directions defined in this
judgment, it being further declared, that the only amounts
which the said plaintiff is entitled to retain are the amounts
paid to him or his attorney for the costs of this action, and
the sums which he received from the sheriff for the principal
and interest reported due to him by the said Roger A. Pryor,
Esq., referee, and interest to the time of such payment to

him by said sheriff. It is further ordered, that the respondent and appellants recover their costs of this appeal, to be adjusted out of the surplus moneys herein."

The said Joseph Meeks, in pursuance of such reference to him, reported that the sum so to be restored amounted to $8,855.32, at the date of his report, which was April 20, 1872. No exceptions were taken to the said report, and on the 6th day of June, 1872, a further judgment was made and entered, which, after reciting the appeal from the Special Term judgment, the decision thereon, as above set forth, and the last mentioned report, that no exceptions thereto had been filed or served, and that it had been confirmed, ordered and adjudged that the plaintiff restore and pay forthwith to the chamberlain of the city of New York the said sum of $8,855.32, with interest thereon from the date of the said report, to be credited by the chamberlain to the credit of this cause, to abide the further order of the court as ordinary surplus money. It was, thereby, further ordered and adjudged, that the said appellants and respondent be paid their respective costs of said appeal. The plaintiff then appealed by a notice to the attorney of the said appellants, and the clerk of the court stating that he appealed from the judgment entered on the 6th day of June, 1872, in so far as the same reverses the judgment rendered at Special Term, and directs him, forthwith — pay to the chamberlain the moneys above specified — to be credited and held by him as above stated.

Before proceeding to the consideration of the case, as presented here, on its merits, it is proper to notice the first point made by the respondents' counsel, claiming that the appeal should be dismissed, on the ground that "the order of 6th June, 1872, is not appealable to this court; that the actual determination of the General Term was one year earlier, 1st April 1871," and that "the subsequent proceedings related merely to the execution of the anterior determination and judgment of the General Term." This claim is not tenable. It is true, that the court below at

General Term, so far as it directed a reversal of the judgment at Special Term, determined and settled the principles and rule by which such reversal was to be made effective, by the direction to the plaintiff to make certain payments, the amount whereof was directed to be ascertained by a referee ; but further proceedings were directed to be taken and required to perfect the judgment, and it did not become operative as a final determination of the rights of the parties, until the amount to be repaid was settled and adjudged on the 6th of June, 1872, and the appeal afterward taken was proper within the decision of the Court of Appeals in *Swarthout* v. *Curtis* (4 N. Y., 415), cited by the respondents' counsel. The plaintiff, in his notice of appeal, states and shows that his appeal from the adjudication of the General Term is not merely in reference to the direction contained in the order of sixth June, but also from that part thereof which adjudges that a portion of the Special Term judgment be reversed. The appeal is in effect and fact, from the actual determination of the court as finally adjudged, and the particular date specified, in the connection in which it is stated, is immaterial. (See, also, *Tompkins* v. *Hyatt*, 19 N. Y., 534.)

The questions intended to be presented by the appeal are, therefore, properly brought before us for review, and will be now considered.

The first is that arising on the waiver, by the appellant defendants, set forth in the judgment of the General Term, dated 1st April, 1871. That waived all claim for a reversal of the judgment at Special Term, so far as it determined the right of the plaintiff to a priority of lien over the said appellants, and to the payment of the whole sum found due to him for principal and interest on his bond and mortgage, and so far, also, as it ordered a sale of the entire mortgaged premises; or so much thereof (if salable in parcels) as might be necessary for the purpose to satisfy the said amount, with the costs and expenses of sale and the plaintiff's costs of the action. The reason for, or inducement to it, is stated in the judgment to be the fact that there had been " a partial execution thereof

before hearing the said appeals;" and such partial execution appears, by a subsequent reference to the proceeds of the sale of the property and directions for the disposition thereof and by a statement made in the opinion of the General Term, to have been a sale previously made in pursuance of the provision and directions of the said judgment. Such waiver operated as a consent that all the provisions, to which it specially referred to, should be, and they were, accordingly affirmed• That part of the judgment has not been appealed from, and is, consequently, conclusive and binding on all the parties to these appeals. That consent and such affirmance necessarily precluded a reversal of the directions for the distribution of the proceeds arising from the sale of the premises. The several provisions of the judgment are to be construed in connection with each other, and their effect was to declare that the property should be sold free, clear and discharged from all arrears of rents therefor and taxes and assessments thereon, and that *they* should be paid out of the proceeds which, to that extent, were substituted for the land which otherwise would have remained liable therefor. Such direction was, therefore, a part of the order to sell, and it must be assumed that the sale or sales made were in accordance with those provisions. That order was entire and indivisible, and the parties by the waiver adopted all of the provisions. The owners of the premises sold cannot avail themselves of a sale by which an increased price to the amount of such rents, taxes and assessments was·realized for their benefit, and to be applied in exoneration and discharge of their liability to the parties to whom they were payable, and at the same time repudiate the direction and order for such application. The effect of such an operation would be to impose on the purchaser the obligation again to pay what had previously been included in the purchase-money paid by him. If the judgment was erroneous in ordering a sale of the property discharged from such rents, taxes and assessments, the error in that respect could only be corrected by directing it to be sold subject thereto. Such direction was rendered impossible by

the waiver and consent referred to and the affirmance of the order as originally made by the Special Term. If, however, I am mistaken as to the effect of the waiver, then, it becomes necessary to examine and determine whether the reversal of the particular directions referred to was proper.

It appears to have been assumed by all parties and by the courts below, that the mortgaged premises were held as leasehold interests only, and were not owned in fee by the mortgagors; and they must, therefore, be so treated and considered on the present appeal. The pleadings show that leases were included in the mortgage, by a general reference to them in the complaint, and there is a special designation thereof in the answer, showing what property was leased and the term of years for which it was to be held, and they, or the record of them can properly be read and considered on this appeal, although not read in the court below. (See *Bank of Charleston* v. *Emeric*, 2 Sand. [Sup. Court], 718; *Jarvis* v. *Sewall*, 40 Barb., 449, 455; *Rockwell* v. *Merwin*, 45 N. Y., 166, 168.)

The mortgage shows that it covers the leases referred to in the answer, and the terms of years created thereby, and is, otherwise, of the purport set forth in the complaint.

The lease from the plaintiff himself to the mortgagors, contains an agreement that if any rent should be unpaid, then, it should be lawful for the lessor to re-enter the premises leased, and to remove all persons therefrom. The other lease has not been produced; but whether the same agreement is contained therein or not, is immaterial. The right of removing a tenant is given by statute, after default in the payment of rent, pursuant to the agreement under which the premises hired by him are held (2 R. S., 513, etc.), and is, substantially, of the same effect as the right of re-entry given by the lease of the plaintiff above mentioned. The purchaser of leasehold property takes it, subject to being dispossessed for arrears of rent. It is not necessary to determine whether they are to be considered as liens or not. It is sufficient that

the party buying takes it charged with the burden, and that he can only retain his possession and thus have the full benefit of his purchase, by the payment of such arrears. Its practical operation is that of a lien, and it is proper in all such cases to direct the deduction, from the proceeds of sale, of such rents as well as taxes and assessments, which, according to the well settled practice, are to be retained and paid by the officer making the sale. This course is in accordance with, and carries out, the principle established by the Court of Appeals in *Robinson* v. *Ryan* (25 N. Y., 320), and it did not prejudice the respondents on this appeal. The amount of those rents in arrear and payable, were to be *deducted* by the sheriff out of the purchase-money, and the plaintiff was to be paid what was adjudged to be due to him, as *mortgagee*, out of the balance that would remain after such deduction; and no specific direction was given to pay any rent, to him as *lessor*, nor was there, in fact, any express provision made for the disposition thereof by the sheriff — unless it may be considered as embraced within the order to deposit the surplus money with the chamberlain of the city of New York. If so, then· that portion of the proceeds, so deducted, was subject to the further order of the court, which, it must be assumed, would direct payment thereof to the party or parties rightfully entitled to it. If it was the duty of the sheriff to pay it to the lessor or lessors, then the amount paid would be subject to examination by the parties in interest, and to a review by the court, on proper exceptions or other appropriate proceedings. It has already been stated, that it is in conformity with the settled practice of the court to have taxes and assessments, that are liens on the premises sold, deducted and paid out of the purchase-money. That is sometimes done under special directions, given in the judgment, but is more frequently, as I believe, provided for by the terms of sale. The fact that the premises in question are leasehold, and that, in the absence of an express agreement by the lessee to pay the taxes and assessments, they are payable by the lessor, is imma-

terial. They may be taxed and assessed against the occupant; and in either case it is necessary, to secure the full value of the property, that the purchaser should acquire title to it free and discharged therefrom. Hence, it is proper that they should be deducted out of the price paid therefor.

It follows, from the views above expressed, that the portion of the judgment of the General Term, appealed from, should be reversed, and that the entire judgment of the Special Term should be affirmed, with costs of the appeals in this court to the plaintiff, appellant.

All concur.

Judgment accordingly.          .          .