THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* THOMAS M. McCALLUM, Appellant.

Fourth Department, April 6, 1961.

*John A. Murray* for appellant.

*Carman F. Ball, District Attorney* (*Leonard F. Walentynowicz* of counsel), for respondent.

*Per Curiam.* This case was reargued in our court pursuant to a decision of the Court of Appeals (8 N Y 2d 155), which reversed the judgment of affirmance by this court (9 A D 2d 719), upon the ground that the defendant was entitled either to representation by counsel or to access to the original record on appeal. The defendant had asked this court for leave to appeal as a poor person from a conviction of burglary and larceny and such leave had been granted but he had not asked for the assignment of counsel and counsel had not been assigned. After the reversal by the Court of Appeals, the defendant asked this court to assign counsel and counsel was accordingly assigned to him.

When the case was here the first time, the principal question raised was whether the defendant had been so intoxicated at the time of the alleged acts as to have been unable to formulate the specific intent required to constitute the crimes of burglary and larceny. This court found that the issue had been fairly submitted to the jury in the court's charge and, upon a review of the evidence, this court found that the jury's verdict against the defendant was in accordance with the weight of the evidence and therefore affirmed.

There is nothing that we need add at this time upon the issue of intoxication. Defendant's attorney argues that the proof established, as a matter of law, that the defendant was so intoxicated that he was unable to entertain the required specific intent but, in our opinion, the trial court correctly ruled that the evidence presented a question of fact on this issue for the jury's determination.

The new point raised by the defendant's counsel and not considered by us upon the former appeal is the question of

whether prejudicial error was committed by the trial court in connection with the production of certain reports made by the arresting officer. Alvin R. Gristmacher, the arresting officer, was called as a witness by the People. He testified that, in his opinion, the defendant was sober at the time he took him into custody immediately after the commission of the crime, in the burglarized building. The defendant's counsel closely cross-examined the officer on this issue. He asked "During this time, would you say, based on your experience as to seeing intoxicated people, would you say that the defendant was intoxicated?" The answer was "I wouldn't say he was intoxicated". The next question was "Did you smell alcohol?" The answer was "No". After two other questions, as to whether the defendant had talked to the officer, were asked and answered, the following ensued:

"Q. Did you make out a report in this case, Officer Gristmacher, about this incident? A. Yes, I did.

"Q. Do you have that report with you at this time? A. I had his name and address, and where it happened, and what time, the witnesses' names, and that is all I have.

"Q. This is all the report you made out at the time? A. No, that is copied off another report.

"Q. Where is this other report? A. I think maybe in the Records Department, or something, I don't know, actually.

"Q. Did you sign the other report? A. I think I made out the District Attorney's report and I was there when the information, I think I made the information out myself.

"Q. Do you have that report?

"Mr. Sullivan: Your Honor, I don't see any reason for showing counsel this report. I object.

"The Court: I will sustain the objection."

The subject was then dropped by the defendant's counsel. There was no further reference to it during the course of the trial or during the course of the court's charge.

It is difficult to determine the precise meaning of the Assistant District Attorney's comment and the court's ruling. It may reasonably be inferred that the Assistant District Attorney anticipated a request by counsel to examine the report in his possession and that, by his statement, he intended to express his opposition to the anticipated request. If this inference is drawn as to the meaning of the Assistant District Attorney's remarks, we may then interpret the court's ruling, sustaining the objection, as meaning that the court would not allow the defendant's counsel to examine the report, if he asked permission to do so.

It appears that there is a printed form used by members of the Police Department of the City of Buffalo, entitled "Police Report to Erie County District Attorney's Office", upon which reports in criminal cases are made. The instructions on the printed form direct the execution of the report in duplicate, one copy to be retained in the police file and the other to be forwarded to the District Attorney. Apparently, in the case of McCallum, the arresting officer filed both copies with the District Attorney. It may reasonably be inferred that the Assistant District Attorney had one of the duplicate originals of the report in his possession in court and this is what he referred to when he said he saw no reason "for showing *this* report" to the defendant's counsel.

There was also a reference in the cross-examination of Officer Gristmacher to some personal notes which the officer had made and which he had with him in court. As appears from the testimony quoted above, he testified that the personal notes merely contained a statement of the defendant's "name and address, and where it happened, and what time, [and] the witnesses' names". It is apparent from the succeeding questions that the defendant's attorney did not wish to see the personal notes but wanted to see the official report which the officer had filed. We are informed that the personal notes of the officer have been destroyed.

Coming down to the formal report which was made and signed by the officer and which was in the possession of the Assistant District Attorney at the time of the trial, it is quite clear under the rule which prevailed in this State at the time of the trial that the defendant's counsel was not entitled, in the first instance, to examine the report. The report had not been referred to in any way upon direct examination by the People; it had not been used to refresh the witness' recoltion. The report, therefore, did not come within the rule laid down in *People* v. *Gezzo* (307 N. Y. 385) that the defendant's counsel must be allowed to inspect a memorandum which had been used to refresh the recollection of a witness (see, also, *People* v. *Miller,* 257 N. Y. 54; *People* v. *Brown,* 2 A D 2d 202).

However, under the rule of law which prevailed at the time of the trial, the trial court should have undertaken an examination of the report itself to determine whether it was in any way inconsistent with the testimony given at the trial. If the court found that the report contained any material at variance with the testimony given by the witness, the part of the report containing such variances should have been made available to the defendant's counsel for use upon cross-examination. (*Peo-*

*ple* v. *Dales,* 309 N. Y. 97, 102–103; *People* v. *Bai,* 7 N Y 2d 152, 155; *People* v. *Walsh,* 262 N. Y. 140, 149; see, also, *People* v. *Nicoll,* 3 A D 2d 64; *People* v. *Pauley,* 281 App. Div. 223.)

The *Dales* case (*supra*) outlined the procedure to be followed by the appellate court where the trial court had failed to comply with the rule. The appellate court was authorized to obtain the original statement and examine it itself and determine whether it revealed any '' contradictions or inconsistencies with any testimony given at the trial '' (p. 103). This was the procedure which the Court of Appeals followed in the *Dales* case. It examined the statement and, having found no contradictions or inconsistencies, it concluded that '' the defense was not privileged to use or inspect the items in question, and the trial court committed no error in refusing the defense request '' (p. 103).

After the argument of the appeal in this case, we obtained from the District Attorney the duplicate original reports and we had a photostatic copy sent to the defendant's counsel. We did this under the authority of the *Dales* case and also under the principle of *People* v. *Flack* (216 N. Y. 123, 129) which authorizes an appellate court to receive documentary evidence of an incontrovertible nature in support of a judgment of conviction. (See, also, *Ripley* v. *Storer,* 309 N. Y. 506, 518.)

We examined the report and found that there was no reference whatever in it to the question of the defendant's intoxication. The description of the crime in the report is as follows:

'' Defendant at 600 AM 12-10-57 Broke And entered Pitney & Bowes Co. 482 Deleware by smashing the glass in the front door with a pop bottle. While the defendant was in the building he was apprehended by police officers. Stamps and petty cash that were taken from drawers in the office desks were found on the defendant

'' Defendant also entered Grevers Florist at 478 Deleware at about 530 A.M. 12-10-57 by breaking the glass in front door with a pop bottle, and entering. A camera and a pair of womans glasses that were taken from the florist shop were found in the defendants room at 484 deleware.''

There is no material inconsistency between this report and the testimony given by the officer upon the trial. The trial court would therefore have been justified in refusing to make the report available to the defendant's counsel if the trial court had examined it upon the trial. Therefore, in the language of the *Dales* case (*supra,* p. 103) '' the trial court committed no error in refusing the defense request ''.

Subsequent to the argument of this appeal and to our sending for the original reports, the Court of Appeals on March 23, 1961, handed down its opinion in the case of *People* v. *Rosario* (9 N Y 2d 286). In that case (p. 289), the Court of Appeals stated that '' upon further study and reflection this court is persuaded that a right sense of justice entitles the defense to examine a witness' prior statement, whether or not it varies from his testimony on the stand. As long as the statement relates to the subject matter of the witness' testimony and contains nothing that must be kept confidential, defense counsel should be allowed to determine for themselves the use to be made of it on cross-examination.''

Applying this rule retroactively to the present case, we must conclude that '' the trial judge should have turned over to the defendant the requested statements [report] in their entirety '' (p. 290). However, as the Court of Appeals said (pp. 290–291) in the *Rosario* case, '' we deem it not amiss to consider whether the ruling which he made prejudiced the defendant, whether, in other words, there was a rational possibility that the jury would have reached a different verdict if the defense had been allowed the use of the witness' prior statements [report] ''. Upon the record and the documents before us we have concluded, as the Court of Appeals did in the *Rosario* case, that the error of the trial court in refusing to turn the report over to the defendant's counsel may be disregarded as harmless, under section 542 of the Code of Criminal Procedure. As we have noted, there is no '' real inconsistency '' between the report and the testimony of the witness. Again quoting the *Rosario* case (p. 291), '' we are as convinced as judges may ever be, in view of the overwhelming proof of guilt and the absence of any real inconsistency between prior statement and trial testimony, that the jury would not have decided the case differently even if defense counsel had had the use of the statements [report] in question.''

The judgment of conviction should therefore be affirmed.

Present: WILLIAMS, P. J., BASTOW, HALPERN, McCLUSKY, and HENRY, JJ.

Judgment of conviction unanimously affirmed.