In the Matter of the Estate of EMMETT W. CARPENTER, Deceased.

Surrogate's Court, Orange County, January 11, 1935.

*Clifton A. Cloud,* for the objectant.

*Samuel M. Cuddeback,* for the administrator.

TAYLOR, S.   This accounting comes on by virtue of the filing of a petition by Emma V. Schafer, as general guardian of Lillian M. Schafer, and the issuance of a citation directed to the administrator of this estate requiring him to show cause why he should not file and settle his account.

Emmett W. Carpenter died intestate June 5, 1922.   Thereafter the intestate's son, Walter L. Carpenter, then over twenty years of age, requested a neighbor, Charles W. Prussia, to become his, the son's, general guardian, and by reason of such guardianship to in turn administer the estate of the father.

The intestate met his death through the alleged negligence of an electric light and power company, and the amount subsequently recovered in an action by the administrator for the intestate's death constituted the greater part of the estate.

In his application for the appointment of Prussia as his general guardian Walter L. Carpenter stated that he was twenty years old on December 8, 1921, and that his only relative in this country was an uncle, and that " the circumstances which rendered such

appointment expedient are that the administrator of the estate of your petitioner's father, Emmett W. Carpenter, may be applied for by the guardian of petitioner, said decedent's only child and next of kin."

In Prussia's petition for limited letters of administration it was recited that the son was the intestate's only next of kin.

An action was instituted under the statute (then Code Civ. Proc. § 1902; now Dec. Est. Law, § 130), and by reason of the fact that the decedent left him surviving no widow, and the son being self-supporting the action was settled for the sum of $2,500.

In addition to the usual petition for leave to compromise and the affidavit of one of the attorneys for the plaintiff in the action (not counsel now appearing for the administrator), there was submitted to the surrogate the affidavit of Walter L. Carpenter, sworn to February 10, 1923, in which he stated: "I am the son of Emmett Carpenter who was fatally injured on June 5th, 1922. There is no one else interested in the estate of the said decedent as he was not survived by a widow and I am his only child. At the time of the granting of Letters of Administration herein I was over the age of 18 years, but not then 21 years of age. Since then I have become 21 years of age." Obviously, the affidavit by the attorney and the administrator's petition in connection with leave to compromise in so far as they stated that Walter L. Carpenter was the decedent's only next of kin were based upon the statements and affidavits of the son.

The entire net estate was long since paid by the administrator to the son.

Objections to this account have been filed by the general guardian of Lillian M. Schafer: (1) To the payment of approximately thirty-six per cent of the amount received in settlement of the death action to the attorneys who conducted it; (2) to the failure of the administrator to charge himself with interest upon the part of the net estate to which the infant claims to be entitled; (3) to the claim of the administrator to statutory commissions; (4) to the payment of counsel fees upon this accounting, and (5) to the payment by the administrator of the entire net estate to Walter L. Carpenter, and asking that the administrator be surcharged with one-half of the estate and that the same be paid to her.

Lillian M. Schafer, through her general guardian, alleges that she is a granddaughter of the said Emmett W. Carpenter; that the intestate had two children, the said Walter L. Carpenter and a daughter who thereafter married and has since died leaving the infant as her only next of kin. Proof has been taken upon this question and I find that the infant petitioner is a granddaughter of the intestate.

The death action was instituted by attorneys who undertook to carry on the same upon a contingent fee basis. No question is raised, nor could it be successfully, that such contracts are not valid. (*Ingersoll* v. *Coram*, 211 U. S. 335; *Fowler* v. *Callan*, 102 N. Y. 395; *Ransom* v. *Ransom*, 147 App. Div. 835.)

Similar contracts for the prosecution of death actions have been upheld wherein the contingent fee percentage was the same or greater than that here. (*Matter of Uravic*, 142 Misc. 775; *Morehouse* v. *Brooklyn Heights R. R. Co.*, 123 App. Div. 680.)

In fact, the objectant has not seriously urged this objection, and it is, therefore, dismissed.

The other objections in regard to interest, commissions and counsel fee are also dismissed. (*Ellis* v. *Kelsey*, 241 N. Y. 374, 379, 381, 382.)

Administrators are not insurers or guarantors, and in order to hold such fiduciaries responsible for their acts it must be shown that they have been guilty of negligence or misconduct of some other nature by which the estate has suffered loss. (*Matter of Scudder*, 21 Misc. 179; *Matter of Balfe*, 152 id. 739; *Matter of Eddy*, 134 id. 112; *Matter of Clark*, 257 N. Y. 132; *Matter of Parsons*, 143 Misc. 368; modfd., 238 App. Div. 883; *Matter of Pratt*, 143 Misc. 751; *Matter of Junkersfeld*, 150 id. 436; revd., 242 App. Div. 708; *Matter of Beadleston*, 146 Misc. 548; *King* v. *Talbot*, 40 N. Y. 76; *Matter of Cady*, 211 App. Div. 373.)

There has been no judicial settlement in this estate so that the administrator may not invoke the protection of a decree. There are numerous instances, however, of estates in which there has been but one next of kin, as here, according to the understanding of the administrator, or but a few next of kin who have had accountings among themselves and the estates have never proceeded to judicial settlement. In absence of fraud or undue influence, such settlement and arrangement are binding upon the parties to it. (*Matter of Wagner*, 119 N. Y. 28.)

The question here, then, is whether this administrator was negligent or guilty of other misconduct in not learning of the existence of the granddaughter. Was the administrator justified in relying not only upon the oral statements, but the affidavits of the son that the latter was the intestate's only next of kin? The administrator has testified and I am satisfied that he had no knowledge whatever of the existence of the intestate's daughter and granddaughter.

*Ellis* v. *Kelsey* (241 N. Y. 374) is urged upon the court as determining that this administrator is liable to account and pay over to the granddaughter one-half of this estate. An analysis of this decision and reference to the facts as set out in the decision of the

Special Term show that the trustee either knew of the existence of the claimant, or was in possession of such facts as would put a reasonably prudent person upon inquiry (241 N. Y. 374, at p. 380; 118 Misc. 763, at p. 773).

*Matter of Killan* (172 N. Y. 547), also cited by the objectant, turned upon a question of practice, the court holding that the accounting was not binding upon the petitioner and to him was as if no accounting had ever been had, for the reason that he was not a party to it. In this case it should be observed that it is doubtful whether the citation was broad enough to include the decedent's brother of whom the administrator had no knowledge.

I have carefully examined *Matter of McDonough* (132 App. Div. 614), which might seem to require a holding in favor of the objectant here. In that case, however, the record on appeal contains a finding that the only act of administration on the part of the deceased administratrix of the estate of Ann McDonough was the withdrawal of the total funds of the estate from the banks and the deposit of them to her own individual credit, and the surrogate in his opinion stated " that where estates are settled without due administration the parties always make such diversion of the funds at their own risk knowing that if at any time a person interested who is not a party to the arrangement seeks legal and orderly administration of the estate it must be granted."

*Trustees of Harvard College v. Quinn (Estate of Connell)* (3 Redf. 514) is in point, but as the administrator here has paid out practically this entire estate in good faith he should not be required to go to the expense which would fall entirely upon him (until he should be reimbursed through the successful termination and collection of the judgment) of taking such proceedings as might be necessary to recover from Walter L. Carpenter the overpayment made to him; the claimant may institute such action. (*Weatherwax v. Shields,* 45 App. Div. 109; *Adair v. Brimmer,* 74 N. Y. 539; *Mills v. Smith,* 141 id. 256; *Erwin v. Loper,* 43 id. 521.)

This question arose in *Matter of Russo* (unreported, New York county, FOLEY, S., N. Y. L. J. Dec. 28, 1934, p. 2600), in which it was said " the application for a compulsory accounting is denied. I find upon the evidence that the executor distributed the estate in good faith at the expiration of the statutory period of administration and without knowledge of the claim of the widow upon which judgment was subsequently rendered in the Supreme Court against the legatees, pursuant to section 170, Decedent Estate Law."

The objections are dismissed. Settle decree on notice.